# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| vs. | § | Cr. No. 22-01721 KWR |
| RAFAEL RAMIREZ-MARTINEZ, | § § § | |
| Defendant. | § § | |

### REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT AND DISQUALIFY UNITED STATES ATTORNEY

**COMES NOW** Defendant Rafael Ramirez-Martinez, through counsel Edward O. Bustamante, and respectfully argues this Court should reject the government's strained reading of the Federal Vacancy Reform Act (FVRA), find Mr. Ellison is not lawfully the acting U.S. Attorney, cease the continued prosecution of Mr. Ramirez-Martinez, void and dismiss the indictment with prejudice, and disqualify Mr. Ellison.

### Mr. Ellison is not properly serving as U.S. Attorney.

The government agrees only 5 U.S.C. § 3345(a)(1) is "at issue here." Gov. 6. The totality of the government's argument hinges on the premise the government may name an acting officer by designating its choice as first assistant *after* the vacancy occurred.

Fatefully the government sidesteps two opinions directly on point: *United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev. Sept. 30, 2025); *United States v. Giraud*, No. 1:24-CR-00768, 2025 WL 2416737 (D.N.J. Aug. 21, 2025). Both cases extensively analyze the FVRA, its text, its purpose, and its history, and both conclude an individual may only fill

1

a vacancy as the first assistant if they served as the first assistant *at the time* the vacancy arose. *Garcia*, 2025 WL 2784640 at *11; *Giraud*, 2025 WL 2416737 at *13.

**The FVRA does not allow a post-vacancy appointed first assistant to serve as the acting official.**

The government asserts the post-hoc elevation of Mr. Ellison to first assistant means he is the Acting U.S. Attorney under the FVRA for three reasons: the FVRA's use of the present-tense; the FVRA's use of "the first assistant *to the office* of such officer," (emphasis added) rather than "the first assistant to the officer"; and elsewhere in the FVRA, it imposes backward-looking eligibility requirements. The government's analysis fails at every turn.

**The use of the present-tense supports one triggering event – the moment of vacancy. (Responding to government's argument on page 7, 9)**

According to the government a "'vacant office' under § 3345(a) is a continuing state." Gov. 7. Therefore, the argument continues, "the present-tense phrasing of the statute" means whoever is the first assistant at any time during an ongoing vacancy automatically becomes the acting officer. Gov. 7. However, the present-tense phrasing *supports* Defendant's position. *Garcia*, 2025 WL 2784640 at *6; *Giraud*, 2025 WL 2416737 at *14. Section 3345(a)(1) requires that, when an officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office[,] … the first assistant … shall perform" those duties. The FVRA provides an automatic procedure for immediately filling a vacancy with the first assistant *at the moment* the office becomes vacant. Contrary to the government's understanding, use of the present-tense means there is only *one* triggering event—the moment the office becomes vacant.

The Supreme Court described (a)(1) as "mandatory and self-executing." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 303 (2017). If the administration could name any preferred first assistant while the office was vacant automatically elevating the post-hoc first assistant to the acting officer, subsections (a)(2) and (a)(3) would be unnecessary. Instead, Congress carefully confined the

2

administration's ability to appoint an acting official to any previously Senate-confirmed officer who works in office requiring Presidential appointment and Senate confirmation (PAS office) or a career civil servant who worked for that executive agency[1]. These are the only "two ways the President may override the automatic operation of (a)(1)." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 557 (9th Cir. 2016). Allowing the administration to simply name a new first assistant after an office becomes vacant subverts the statutory scheme Congress envisioned. After all, Congress enacted the FVRA to combat "a threat to the Senate's advice and consent power." *N.L.R.B.*, 580 U.S. at 295.

Additionally, Congress's use of "the" in (a)(1) underscores it refers to a single specific person – the person serving as first assistant at the moment the vacancy occurs. In contrast, both (a)(2) and (a)(3) refer to "a person" or "an officer or employee." *Cf. Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (explaining the "use of the definite article ... indicates that there is generally only one" person covered). What matters is *the* person serving as first assistant *at the moment* the office becomes vacant.

### The use of "the office of such officer" rather than just "the officer" is a distinction without a difference. (Responding to government's argument on page 7.)

Nor does the use of the phrase "the office of such officer" as opposed to "the officer" allow a post-vacancy first assistant to automatically become an acting officer. According to the government, this distinction—office vs. officer—supports its interpretation the first assistant need not be serving at the time of the vacancy. Gov. 8. "[T]his small variation in wording does not change the fact that subsection (a)(1) is an automatic mechanism established by Congress to fill the vacancy with no Executive Branch involvement." *Garica,* at *8. Further, "[t]he phrase 'office of such officer' can

---

[1] It also requires a salary at least equal to a GS-15.

just as easily be read as a definition for 'first assistant,'" *i.e.*, "a term of art" as opposed to "the person on which the outgoing officer relied most heavily," *id.*, or someone serving in an administrative assistant role.[2] *Giraud*, 2025 WL 2416737, at *16. Even if the phrase "refer[s] to the vacant office," not the outgoing officer, the result is the same, "because the office must become vacant for at least a moment before the first assistant begins performing its functions and duties." *Id.*

### The government's analysis of "backward-looking eligibility requirements" is unsound.
### (Responding to government's argument on pages 7-8.)

Far from supporting the government's argument, the two "backward-looking" requirements strengthen Defendant's argument. Section 3345(a)(1) need not look backwards because it focuses solely on the present—the precise moment when the vacancy occurs. Any constraint on eligibility would negate the automatic nature of the rule. *See Giraud*, 2025 WL 2416737 at *17. In contrast, (a)(3) and (a)(2) allow the President to depart from (a)(1) but places strict limits on the candidate to ensure capable leadership. "Viewed from this perspective, the presence of backward-looking language in subsections (a)(2) and (a)(3) actually supports Defendants' reading of the FVRA. Subsection (a)(1) is not limited like (a)(2) and (a)(3) precisely because the President plays no role in its operation." *Garcia*, 2025 WL 2784640 at *6. Indeed, if the government's reading of (a)(1) were correct, there would have been no need for Congress to have provided for the alternatives in (a)(2) and (a)(3).

The government next turns to the "backward-looking" requirement in § 3345(b)(1)(A)(i). Gov. 7-8. That subsection bars an individual from the acting position if they have also been

---

[2] *See also* Federal Vacancies Reform Act, S. Rep. No. 105-250 at 12 (1998) (explaining the office vs. officer phrasing conforms with "the practice under current law"); 144 Cong. Rec. S12810-06, S12822 (daily ed. Oct. 21, 1998) (statement of Sen. Thompson) ("[T]he change in wording is not intended to alter case law on the meaning of the term 'first assistant'").

nominated for that position unless they served as first assistant before the vacancy. The government argues (b)(1) would be superfluous if (a)(1) required an individual to have served as first assistant at the time of the vacancy. Gov. 7. However, such an interpretation assumes (b)(1) is limited to only those who may become acting officers by dint of being the first assistant. The Supreme Court explained (b)(1) applied to all acting officers. *N.L.R.B.,* 580 U.S. at 299. That portion of (b)(1) then focuses on acting officers who were career civil service servants and PAS officers. *See* Thomas A. Berry, *S.W. General: The Court Reins in Unilateral Appointments*, 2017 Cato Sup. Ct. Rev. 151, 171-72.

The *Garcia* Court also emphasized (b)(1) limits *nominees* who may serve as acting officer – not individuals who may fill vacancies. Thus, "the Court does not find it a persuasive basis for broadening the scope of subsection (a)(1)." *Garcia*, 2025 WL 2784640 at *7.

The government points to both a letter from the Government Accountability Office (GAO) and an opinion from the Department of Justice's Office of Legal Counsel (OLC). Gov.8. First, both the GAO and the OLC have answered the question differently at different times. *Compare* Letter from Carlotta C. Joyner, Dir., Strategic Issues, GAO, to Fred Thompson, Chairman, U.S. Senate Comm. on Governmental Affairs, at 2 (Feb. 23, 2001)[3] ("Eligibility can be based on . . . service as a first assistant to the former holder of the position."), *with* Letter from Victor S. Rezendes, Dir., Strategic Issues, GAO, to U.S. Senators Joseph I. Lieberman and Dan Burton, at 2 (Dec. 7, 2001)[4] (finding the government's interpretation "reasonable"); *compare* 23 Op. O.L.C. 60, *4 (1999) (supporting the defense's interpretation), *with* 25 Op. O.L.C. 177, *3–*4 (2001). Second, the "Supreme Court has recently emphasized courts need not defer to agency interpretations of statutes."

---

[3] http://www.gao.gov/assets/80/75036.pdf.
[4] https://www.gao.gov/assets/gao-02-272r.pdf.

5

*Garcia*, 2025 WL 2784640 at *8 (citing *Loper Bright Enters., Inc. v. Raimondo*, 603 U.S. 369 (2024)). These agency opinions have meager persuasive value. *See Hooks*, 816 F.3d at 564 (rejecting arguments based on GAO and OLC opinions); *cf. Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (deference is "rarely" appropriate when an agency's current construction conflicts with a past one).

**The government's backfilling theory creates, then ignores, a superfluity problem. (Responding to government's argument on pages 9-10.)**

The government denies its sweeping view of subsection (a)(1) would eliminate subsections (a)(2) and (a)(3) in virtually all situations. Instead, it suggests these subsections exist in the eventuality the first assistant role itself is a PAS office and empty at the time of vacancy. Gov. 9. "The coincidence of those two circumstances will undoubtedly be 'unusual'", *Giraud*, 2025 WL 2416737 at *16, and "likely to be rare." *Garcia*, 2025 WL 2784640 at *5. The court has a duty to "avoid a construction that makes subsections (a)(2) and (a)(3) largely insignificant. *See TRW Inc. v. Andrews*, "534 U.S. 19, 31 (2001) (rejecting interpretation that would result in the text of a statute lying "dormant in all but the most unlikely situations")." *Id.* Under Defendant's reading, subsections (a)(2) and (a)(3) are not afterthoughts but rather crucial curbs on executive overreach.

**The government's backfilling theory thwarts the FVRA's purpose. (Responding to government's argument on page 9.)**

The government proffers a pallid policy argument: under the defense's interpretation, "§ 3345(a)(1) would be less useful as an automatic default rule." Gov. 9. But this rests on a misunderstanding of the automatic nature of the default rule. The government envisions that following a vacancy an agency head would name a new first assistant – the very manipulation the (a)(1) was enacted to avoid. As *Giraud* highlighted, the Senate explicitly intended "[i]f there is no first assistant, no one is permitted by law to become an acting officer" except through the *other* subsections. 2025 WL 2416737 at *17 (quoting S. Rep. No. 105-250, 13). The *Garcia* Court also

6

underscored this was the Senate's understanding: "if there is no first assistant when the vacancy arises, and if the President does not exercise his narrowly controlled power to appoint, then '[n]o one else may serve as acting officer.'" *Garcia* 2025 WL 2784640 at *11 (quoting S. Rep. No. 105-250, 14).

Although the statute does not directly state § 3345(a)(1) applies to already in place first assistants, "silence does not render the statute ambiguous." *Maralex Res., Inc. v. Barnhardt*, 913 F.3d 1189, 1201 (10th Cir. 2019). There is no need to go further to conclude FVRA forbids post-vacancy appointment of a first assistant. But examining the "legislative history confirms what the text makes clear." *Giraud,* 2025 WL 2416737 at *18. FVRA was a reaction to executive overreach, including the administration's contention that roles requiring confirmation—Department of Justice roles specifically—could be filled by means outside the Vacancies Act. *Giraud*, 2025 WL 2416737 at *18. Congress rejected that position as "wholly lacking in logic, history, or language", and it enacted the FVRA to foreclose it. *Id.* (quoting S. Rep. No. 105-250, at 3). "[T]he text and history of the FVRA make clear what cannot happen: the Attorney General cannot designate [any person] as first assistant and thereby make her Acting U.S. Attorney." *Garcia*, 2025 WL 2784640 at *14.

**The 120-day time limit of Section 546 bars Mr. Ellison from continuing to serve as U.S. Attorney. (Responding to government's argument on page 10-13.)**

Even if Mr. Ellison might otherwise be a valid acting candidate under the FVRA, he cannot continue to serve as a temporary U.S. Attorney because the time has elapsed under 28 U.S.C. § 546. The government disputes this conclusion claiming: 1) it can switch back and forth between the FVRA and § 546 because they are "supplement[al]", Gov. 12; 2) its reading does not render § 546(d) superfluous because judicial appointments have happened before, *Gov.* 12 & n.3 (referencing two instances); and 3) the "mischief" of lengthy non-confirmed U.S. Attorney service addressed by

Section 546(c)(2)'s 120-day time limit "has nothing to do with the FVRA" Gov. 13. The government's analysis gets it wrong at every step.

**The government cannot use the FVRA to extend the term of an Interim U.S. Attorney.
(Responding to government's argument on page 12.)**

Section 546 caps the "serv[ice]" of any "person appointed as United States attorney under this section" to "120 days after appointment." 28 U.S.C. § 546(c). The government presumes once it makes an FVRA designation, the 120-day limit vanishes. Gov. 12. The statutes exist side-by-side and should be read harmoniously. "When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)(cleaned up). The government argues without an "irreconcilable conflict," the newer, more specific time should be ignored in favor of the general time limit. Gov. 12. The Supreme Court cautions otherwise, explaining "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). The newer and more specific time limits of § 546, then, govern a U.S. Attorney's temporary appointment.

Congress could have tethered the 120-day cap to the "term of an appointment under this section" rather than tying it to the "serv[ice]" as "United States attorney." That phrasing would have allowed an appointee's "serv[ice]" to run longer than 120 days if the President designated them under the FVRA. Instead, Congress anchored the time limit to *any* service by a § 546 appointee, regardless of any intervening designation under another statute.

**The government's reading renders § 546(d) superfluous. (Responding to government's argument on page 12.)**

The government sidesteps that its reading renders § 546(d) superfluous by highlighting "[t]here have frequently been instances" when "the Executive Branch has allowed" a district court's § 546(d) appointment. Gov. 12. But this does not salvage its interpretation. Under the government's theory the Attorney General can appoint someone for 119 days under § 546(a), then switch the appointment to the FVRA, and then, when the FVRA clock runs out, reuse § 546, and so on, evading each statute's time limits indefinitely. This scheme renders § 546(d) "dormant in all but the most unlikely situations." *TRW*, 534 U.S. at 31. Such a result forecloses the government's interpretation, especially given § 546(c)(2)'s separation-of-powers underpinnings.

**The government ignores the mischief created by toggling back and forth between the FVRA and § 546. (Responding to the government's argument on page 13.)**

The government insists the mischief behind § 546(c)(2) "has nothing to do with the FVRA." Gov. 13. Congress enacted § 546(c)(2)'s 120-day limit precisely to prevent the Executive Branch from evading the Senate confirmation process for U.S. Attorneys. *See Preserving Prosecutorial Independence: Is the Department of Justice Politicizing the Hiring and Firing of U.S. Attorneys*, Hearing before the S. Comm. on the Judiciary, 110th Cong. (2007).[5] The government's treatment of the subject does not address that history, much less explain how it reconciles its chicaneries here with the purpose of the § 546.

Nothing about the government's reading of § 546(c)'s 120-day limit is persuasive. Because Mr. Ellison was "appointed as United States Attorney" under § 546, he cannot "serve" as U.S.

---

[5] https://www.govinfo.gov/content/pkg/CHRG-110shrg35800/html/CHRG-110shrg35800.htm

Attorney in any capacity, even under the FVRA, for more than "120 days after appointment." 28 U.S.C. §546(c).

**The government cannot circumvent the FVRA by delegating all the responsibilities of the U.S. Attorney. (Responding to government's argument on pages 13-18.)**

The government's analysis renders the position of U.S. Attorney entirely unnecessary: "All the functions of the U.S. Attorney, including the power to prosecute, are also vested in the Attorney General, 28 U.S.C. § 509, who has authority to delegate any of her functions to others in the Department as she sees fit, 28 U.S.C. § 510." Gov. 13. However, the administration cannot avoid the FVRA through delegation. "That is exactly what section 3347(b) prohibits." *Giraud*, 2025 WL 2416737 at *22.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office" requiring confirmation unless a different vacancy statute applies to the "specified office." 5 U.S.C. § 3347(a)(1). "But this exception to the FVRA's exclusivity does not include general delegation statutes like those relied on by the government." *Garcia*, 2025 WL 2784640 at *12 "[T]he argument now made by the government was expressly rejected by Congress in 1998." *Garcia*, 2025 WL 2784640 at *14; *Giraud*, 2025 WL 2416737at *22 ("The FVRA's exclusivity provision was enacted for the *express purpose* of precluding the *exact argument* that the Government presses here.")

Rather than engage with analysis set out in *Garcia* and *Giraud*, the government merely states those cases misread "the exclusivity and remedial provisions of the FVRA" and proceeds to recycle the delegation argument those cases rejected. Gov. 14. The government's delegation theory conflates the "function and duties" of the exclusivity provision, 5 U.S.C. § 3347, with the "function or duty" in the ratification bar, 5 U.S.C. § 3348(a)(2). However, § 3348(a) limits "function or duty"

only to "this section," not other sections. Additionally, since § 3348(a)'s narrow definition is limited to only that section, for the rest of the FVRA, the phrase "functions and duties" retains its "broader sense of *all* functions or duties of the vacant office." *Giraud*, 2025 WL 2416737 at *24.

Undaunted, the government relies on the same three cases it used in its twice-rejected delegation argument: *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064 (9th Cir. 2024); *Kajmowicz v. Whitaker*, 42 F.4th 138 (3d Cir. 2022); and *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022). *See Garcia*, 2025 WL 2784640, 12-14; *Giraud*, 2025 WL 2416737, 25-27. As both courts noted, *Gonzales* and *Kajmowicz* deal solely with § 3348 and are inapplicable *Garcia*. 2025 WL 2784640 at *13; *Giraud*, 2025 WL 2416737 at 25.

*Arthrex* applies § 3348 definition of "functions and duties" as the government advocates. However, the opinion is fatally flawed. In quoting § 3348's definition, *Arthrex* omitted the crucial "in this section" phrase. 35 F.4th at 1335. *Arthrex* never even considered that § 3348's "definition might be limited to only that section"— which, of course, is exactly what § 3348 says. *Giraud*, 2025 WL 2416737, at *25 ("The Federal Circuit never so much as mentioned the limiting provision in section 3348(a)'s chapeau…"); *Garcia*, 2025 WL 2784640, at *13 n8 ("Significantly, however, *Arthrex* never even mentions the fact that the nondelegability definition on which it relies in § 3348(a) is expressly limited to "this section" – a significant omission in the opinion.") The administration cannot use general delegation authority as an end-run around the statute.

**The government's reading violates the Appointments Clause. (Responding to the government's argument on pages 18-19)**

Even if the statutes do not foreclose the government's position, the Constitution does. Following the Supreme Court's *Arthrex* decision, U.S. Attorneys are principal officers requiring

11

confirmation. *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021). The government, focusing on just one of *Arthrex's* factors, concludes because U.S. Attorneys "are supervised and can be reversed by the Attorney General and the Deputy Attorney General" they cannot be principal officers. Gov. 18. However, the government ignores the Supreme Court has consistently treated removal power as a significant factor. *See e.g. Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,* 561 U.S. 477 (2010) (holding executive officials were inferior officers in largely because they were subject removal by a superior). *Arthrex* emphasized the agency head could not remove patent judges without cause. 594 U.S. at 23. The government omits this. In stark contrast, U.S. Attorneys cannot be removed by the Attorney General (the agency head) under *any* circumstance, even *for* cause. 28 U.S.C. § 541(c).

The government seeks to avoid the conclusion U.S. Attorneys are principal officers by relying on a stray sentence in *Myers v. United States*, 272 U.S. 52, 49 (1926), suggesting the removal power extends "to a United States attorney, an inferior officer." Gov. 18. *Myers* concerned an entirely different question –removal– than the one facing this Court–appointment. Moreover, the Supreme Court warns against "follow[ing] our dicta in a prior case in which the point now at issue was not fully debated." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006).

As a last resort, the government argues even if the U.S. Attorney position is a principal officer, "the acting position would not be anything more than an inferior officer." Gov. 19. That doctrine presumes the "temporary" officer serves "for a limited time and under special and temporary conditions." *Id.* Yet the government's theories would permit Mr. Ellison to serve indefinity – that is not limited, special, or temporary.

**The Court should dismiss the indictment; the judges of the district may select an interim U.S. Attorney. (Responding to government's argument on pages 19-26.)**

The government cites *United States v. Young*, 541 F. Supp. 2d 1226 (D.N.M. 2008), for the proposition that "even were Mr. Ellison not eligible to serve as the Acting U.S. Attorney, 'this Court could not dismiss the indictment on that basis.'" Gov. 21. However, the district court rejected Young's argument that § 546(d) violated the separation of powers and was patently unconstitutional. *Young,* 541 F. Supp. 2d at 1277. This case does not involve a challenge to the Court's authority to appoint an interim U.S. Attorney under § 546(d): it is a challenge to the executive branch's attempts, repeated across several federal districts, to circumvent the legal framework of appointments.

The government fails to appreciate that, while a defendant may not have a right to choose their prosecutor, the Due Process Clause requires the prosecutor to be impartial and therefore, properly appointed. *See* 18 U.S.C. § 208(a) (criminalizing certain conflicts of interest); *Young v. United, States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 809 n.21 (1987) (imposing as a matter of "supervisory authority" a "requirement of a disinterested prosecutor," and reserving the constitutional issue) *cf. Erikson v. Pawnee Cnty. Bd. Of Cnty. Com'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001) ("[T]he participation of a privately-retained attorney in a state criminal prosecution does not violate the defendant's right to due process under federal law unless the private attorney effectively controlled critical prosecution decisions.") (cleaned up).

Even if no due process violation exists, the Court should still exercise its inherent authority and dismiss the indictment without prejudice to "protect[] the integrity of the federal courts." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). The government's actions pose a risk not just to the integrity of this prosecution, but also to the Senate's constitutional advise-and-consent function and the judiciary's authority to select an interim U.S. Attorney.

The government maintains its continued prosecution of Mr. Ramirez-Martinez is valid under Criminal Rule 7 because a validly serving Assistant U.S. Attorney signed it. However, that attorney

13

continues its prosecution of Mr. Ramirez-Martinez under Mr. Ellison's authority and supervision. As the motion explains, the Court should disqualify any attorneys acting under Mr. Ellison's supervision (as opposed to the Attorney General's supervision). Mtn. 25.

The government concludes because Mr. Ellison's service was not set to expire until August 15 and he resigned on August 13, the district court has no authority to appoint an interim U.S. Attorney. However, there is no authority supporting the claim that by leaving before § 546's 120-day bar this allows the U.S. Attorney to transition into an acting appointment. Because there is no authority for Mr. Ellison's acting appointment, his term expired on August 15, 2025.

In any event, § 546(d) applies when, as here, an interim U.S. Attorney's resignation on day 118 is not a bona fide resignation. The judges of this district should exercise their § 546(d) authority to stop the swell of executive branch overreach rippling across federal districts where the executive has been unable or unwilling or both to appoint and confirm a validly serving United States Attorney.

**Conclusion**

The Court should void and dismiss the indictment with prejudice, and it should disqualify Mr. Ellison and his supervisees from continuing to participate in its criminal prosecution of Mr. Ramirez-Martinez in this district.

Respectfully Submitted,

/s/ Edward O. Bustamante
_____
EDWARD O. BUSTAMANTE
PO BOX 31026
ALBUQUERQUE, NM 87109
505.659.2306
eobatty@gmail.com

This certifies a copy of this pleading
Was served on Kimberley Brawley
First Assistant United States Attorney on
October 29, 2025 via electronic filing.

 /s/ Edward O. Bustamante      
EDWARD O. BUSTAMANTE