IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, Plaintiff,

v.

| | |
|---|---|
| RAFAEL RAMIREZ-MARTINEZ, Defendant. | No. 1:22-cr-01721-KWR |
| EDISON BRADY, Defendant. | No. 1:24-cr-01105-MLG |
| ALI ALHIGAIMI ESQUEDA, Defendant. | No. 1:25-cr-03250-JB |
| BRYSON CHEE, Defendant. | No. 1:25-cr-03353-JB |
| JOSHUA BLACK, Defendant. | No. 1:25-cr-03354-MLG |
| RYAN NOLAN KEE, Defendant. | No. 1:25-cr-03356-KG |
| JULIAN GUNTHER, Defendant. | No. 1:25-cr-03366-JB |
| JOSE MAGANA GARCIA, Defendant. | No. 1:25-cr-03549-JB |
| SEALED, Defendant | No. 1:25-cr-03837-MLG |
| LEON JEREMY POELLNITZ, Defendant. | No. 1:25-cr-03858-KG |
| JOHN C. DOMINGUEZ, Defendant. | No. 1:25-cr-03864-KG |
| RICHARD SEDILLO, Defendant. | No. 1:25-cr-03865-JB |
| MARTY LOPEZ, Defendant. | No. 1:25-cr-04139-DHU |
| MABELENE GREY, Defendant. | No. 1:25-cr-04141-KG |
| AZARIAH CLEVELAND, Defendant. | No. 1:25-cr-04145-DHU |
| DESIREE ARCHULETA, Defendant. | No. 1:25-cr-04412-DHU |
| KENDALL BENALLY, Defendant. | No. 1:25-cr-04413-KG |
| ERIC SHAUN MCAFEE, Defendant. | No. 1:25-cr-04418-MLG |
| JACOB EZEKIEL MARTINEZ, Defendant. | No. 2:25-cr-03253-SMD |

## **SUPPLEMENTAL BRIEFING BY THE UNITED STATES**

The United States respectfully submits supplemental briefing on the three issues ordered by the Court at the November 14 hearing, as reflected in its November 19 orders:

- Is Ryan Ellison a validly appointed First Assistant United States Attorney? And can there be a validly appointed First Assistant when there is no United States Attorney in place?

- Provide and argue legislative history discussing why 28 U.S.C. § 546(e) was deleted in 2007 legislation?

- What authority does the Attorney General have to make retroactive orders, or to make orders effective retroactively? Specifically, what authority did Attorney General Bondi have to order that Ryan Ellison serve as the First Assistant United States Attorney effective retroactively to the time of his resignation as Interim United States Attorney?

In addition, the United States attaches to this pleading (as Ex. 6) legislative history (a Senate report) on the Federal Vacancies Reform Act that the Court requested at the hearing. Hr'g Tr. 131, 133. The Court did not ask for briefing on that topic, *id.* at 131, other than to ask the United States to submit a copy of its brief in the *Giraud* appeal discussing that history, which the United States did by email to the Court and counsel following the hearing.

I. **Mr. Ellison Is the Valid First Assistant United States Attorney.**

Beginning with the Court's first question, the Attorney General validly exercised her plenary authority over U.S. Attorneys and Assistant U.S. Attorneys when she designated Mr. Ellison to serve as the FAUSA. The FAUSA is chosen by the Attorney General. Under a Department of Justice regulation,

> Every office within the Department to which appointment is required to be made by the President with the advice and consent of the Senate ("PAS office") shall have a First Assistant within the meaning of the Federal Vacancies Reform Act of 1998. Where there is a position of Principal Deputy to the PAS office, the Principal Deputy shall be the First Assistant. Where there is no position of Principal Deputy to the PAS office, the First Assistant shall be the person whom the Attorney General designates in writing.

28 C.F.R. § 0.137(b). Because the office of U.S. Attorney does not have a Principal Deputy, the FAUSA is "the person whom the Attorney General designates in writing." For the District of New Mexico, that person is Mr. Ellison.

At the hearing on November 14, 2025, the defendants suggested for the first time that the Attorney General's designation of Mr. Ellison as the FAUSA is invalid. As the United States understands it, the defendants advance three bases for this alleged invalidity: (1) that the Attorney General cited 28 U.S.C. § 509 and 510 but not § 542 in her order designating Mr. Ellison as FAUSA, *see* Hr'g Tr. 27, 35; (2) that Mr. Ellison's resignation as the interim U.S. Attorney under § 546 did not create a vacancy under the FVRA, *id.* at 27, 29; and (3) that because Ms. Brawley is the one "doing first assistant duties," *id.* at 26, the Attorney General's designation of Mr. Ellison as FAUSA was

2

"just a means to an end," *id.* at 28, and "a backdoor way [of] getting him in to be the Acting U.S. Attorney," *id.* at 29.

None of these arguments has merit. First, the Attorney General was not required to cite 28 U.S.C. § 542 in her August 14 order. Section 542 is the provision that allows the Attorney General to hire and fire Assistant U.S. Attorneys (AUSAs). *See* 28 U.S.C. § 542 (Attorney General may "appoint one or more assistant United States attorneys in any district when the public interest so requires," subject to her removal); *United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 291 (D.P.R. 1999) (referring to § 546 as "hire and fire" authority). Mr. Ellison has held an AUSA appointment since 2018. There was no need to hire him again. The statutory authorities that support the Attorney General's authority to designate Mr. Ellison as the FAUSA include 28 U.S.C. § 503 ("The Attorney General is the head of the Department of Justice."); 28 U.S.C. § 509 (vesting "all functions of agencies and employees of the Department of Justice" in the Attorney General, with exceptions not relevant here); 28 U.S.C. § 510 (vesting the Attorney General with broad authority to delegate functions); and 28 U.S.C. § 519 (providing that the Attorney General "shall direct all United States attorneys [and] assistant United States attorneys" "in the discharge of their respective duties"). But even if § 542 were the appropriate authority for the Attorney General's designation of a FAUSA, an agency need not cite the specific statutory provision on which it relies when making a decision. *See Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964).

Second, whether Mr. Ellison's resignation as Interim U.S. Attorney created a new vacancy under the FVRA has no bearing on the validity of Mr. Ellison's designation as FAUSA. This is true for two reasons. First, regardless of whether Mr. Ellison's departure created a *new* vacancy, the parties agree that the office of the U.S. Attorney was vacant when the Attorney General designated Mr. Ellison the First Assistant (and by operation of the FVRA, the Acting U.S. Attorney). *See* Motion at 4, 24 (asserting the applicability of FVRA's provisions that apply to vacant offices); Resp.

3

at 5. Second, and more directly to the Court's question about the validity of a FAUSA designation when no U.S. Attorney is in place, the designation of a first assistant is not tied to the occupancy status of the PAS office. The FVRA places no constraints upon an agency's choice of first assistant, including as to the timing of that choice. Furthermore, a "first assistant" under the FVRA is an assistant "to the *office* of the officer," not to any particular officer, *see* 5 U.S.C. § 3345(a)(1) (emphasis added), and DOJ's regulation likewise requires that "[e]very [PAS] *office*" have a "First Assistant," *see* 28 C.F.R. § 0.137(b) (emphasis added). The defendants have pointed to no authority, and the United States is aware of none, preventing an agency head from selecting a new first assistant when the PAS office is vacant. If that reading were correct, then a first assistant who leaves during a PAS vacancy could not be replaced until the PAS office is filled. The defendants have not suggested any reason why Congress would want to compound a vacancy in a PAS office with mandated vacancies in lower positions as well.

Third, as to the argument that Ms. Brawley is the "real" FAUSA because of the type of duties the defendants believe her to be performing, the defendants misunderstand the FAUSA position. The defendants' argument appears to proceed from the premise that the FAUSA has a fixed and unalterable set of duties. *See* Hr'g Tr. 26 (referring to the duties and functions of the FAUSA).[1] *See* 5 U.S.C. § 3345(a)(1). This is incorrect. Apart from providing that the "first assistant" "shall perform the functions and duties of the office temporarily in an acting capacity" upon a vacancy in the PAS office, the FVRA assigns no other duties to the position, *id.*—nor does any other statute or regulation of which the government is aware. It is standard practice for the FAUSA to serve as the second-in-command to the U.S. Attorney *and* to lead the office in the absence of a

---

[1] It is unclear what role the defendants believe Ms. Brawley to be playing at present. At times during the hearing, they referred to her as "doing first assistant duties," *id.* at 26, implying that she is serving as the second in command, but at others they suggested that she is "the boss" or "la mera mera," *id.* at 105-06.

U.S. Attorney, and thus the Attorney General's designation of Mr. Ellison as FAUSA carries that well-understood meaning. Nothing in the FVRA or any other source, however, prevents the Attorney General from altering the duties of the FAUSA or creating a new position with duties similar to those that are typically performed by a FAUSA. Cf. *Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) ("As we have repeated time and again, an agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). It is thus irrelevant whether Ms. Brawley is performing the kind of duties a FAUSA typically performs when there is a U.S. Attorney in place. Regardless of the delineation of functions between Mr. Ellison, Ms. Brawley, and others in the office, the Attorney General has chosen Mr. Ellison to lead the office in the absence of a PAS U.S. Attorney, whether that be as Acting U.S. Attorney under the FVRA or simply as FAUSA in the absence of an any higher officer in the USAO-DNM. None of Mr. Ellison's duties or authority to act on behalf of the Department or the USAO-DNM depends upon the FAUSA title—though to be clear, that title is valid because the Attorney General has designated Mr. Ellison in writing as 28 C.F.R. § 0.137(b) requires.

In addition, the Attorney General has now issued a new order confirming her delegation of authority to Mr. Ellison. In that order, dated December 4, 2025, the Attorney General wrote:

> On August 14, 2025, I designated Ryan Ellison as First Assistant United States Attorney for the District of New Mexico, thereby conferring on him authority to supervise and conduct legal proceedings in that district during the vacancy in the office of United States Attorney. *See* Att'y Gen. Order 6371-2025. Questions have since arisen about the scope of Mr. Ellison's authority to perform the functions of that office. For the avoidance of doubt, I hereby confirm my prior authorization of Mr. Ellison to perform such functions and delegate to him all the delegable, nonexclusive functions of the United States Attorney for the District of New Mexico while the position of United States Attorney remains vacant. Mr. Ellison is authorized to conduct in the District of New Mexico any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before United States Magistrates. This authority includes supervising the conduct of Assistant United States Attorneys and Special Assistant United States Attorneys working on such proceedings.

Ex. 1. In light of this order, it does not matter whether Mr. Ellison is the FAUSA or is simply exercising delegated authority from the Attorney General under a different title. It is beyond dispute that Mr. Ellison is the person the Attorney General has chosen to conduct legal proceedings on behalf of the Department in the USAO-DNM in the absence of a Senate-confirmed U.S. Attorney. Furthermore, any question about whether Mr. Ellison has been authorized to supervise the attorneys conducting criminal cases in the USAO-DNM has been answered in the affirmative by the Attorney General's new order.

## II. Congress Consciously Omitted an Exclusivity Provision from Section 546.

In response to the Court's question about the legislative history behind the removal of a proposed exclusivity provision in Section 546, the United States has located legislative history showing that Congress passed the amendments to Section 546 without an exclusivity provision because the exclusivity provision did not have enough support to pass both houses of Congress. On March 26, 2007, the House of Representatives passed H.R. 580, which in addition to restoring the 120-day limit to the Attorney General's appointment authority under Section 546 included a subsection (e) that read: "This section is the exclusive means for appointing a person to temporarily perform the functions of a United States attorney for a district in which the office of United States attorney is vacant." Ex. 2. The bill was submitted to the Senate, which days earlier had passed its own version of an amendment to Section 546 in the form of S. 214. Ex. 3. The Senate bill was identical to H.R. 580 with the exception that it lacked an exclusivity provision at subsection (e). *Id.* The House version stalled in the Senate. On May 22, 2007, the House considered S. 214. Two representatives addressed the delay in floor statements:

> Mr. CONYERS. …Mr. Speaker, I would like to describe this measure, Senate bill 214, as an important one that will restore historical checks and balances to the process by which interim U.S. attorneys are appointed….
>
> …Now, Members of the House, we have already passed similar legislation. While I would prefer to see our version enacted into law, we are taking up the Senate-passed

> version in order to expedite the enactment of this important step in restoring legal safeguards against the abuse of executive power to politicize the Federal prosecutorial function in the Department of Justice.
>
> …
>
> Mr. BERMAN. …Mr. Speaker, last month, the House passed H.R. 580 to restore the checks and balances to the U.S. attorney appointment process. The bill we are considering today takes a slightly different path to nearly the same end.
>
> … The reason we are considering a second bill on this topic is that Republicans in the other body have blocked the House-passed bill from progressing. The only difference between these two bills is that the House bill specifically precluded the administration from using the Vacancy Reform Act to extend interim appointments for another 210 days. This is a provision that the Bush administration used nearly 30 times in its first 5 years to replace U.S. attorneys. If this avenue remains open, we are permitting the practice of circumventing Senate confirmation to continue. A temporary appointee could serve for nearly a year without a Presidential nomination or going through the confirmation process…
>
> We should fix the system completely, and we will, but because of threatened holds in the other body, we are only doing a partial fix today.

Ex. 4. Following these statements and others, the House passed the Senate version later that day. Ex. 5.

In summary, while one house of Congress voted to make Section 546 exclusive, that provision lacked the support necessary for it to become law. Congress enacted the amendments to Section 546 with full awareness that the provision would not supplant the FVRA for U.S. Attorney vacancies.

### III. The Attorney General's Authority to Make an Order Retroactive

Counsel for the United States was not able to find any authority that addresses the Attorney General's power to make an order retroactive. As counsel stated at the hearing, however, Hr'g Tr. 24-25, 104-05, the United States does not believe such authority to be at issue in this case. Whether Mr. Ellison became the FAUSA at 5 p.m. on August 13 (the date of his resignation as Interim U.S. Attorney) or at some point on August 14 (the date of the Attorney General's order) should not matter here because no defendant has challenged any action taken by Mr. Ellison (if any) during that

7

brief window. Nor has the United States contended that Mr. Ellison was the incumbent First Assistant at the time he resigned; it has simply argued that no such requirement is present in the FVRA. *See* Mot. Resp. at 5-10.

## CONCLUSION

For the reasons argued here and previously, the Court should deny the defendants' motions to dismiss their indictments and disqualify Mr. Ellison from supervising the prosecution of their cases.

We hereby certify that a copy of this motion was delivered via CM/ECF to counsel for the defendants.

Respectfully submitted,

**RYAN ELLISON**
Acting United States Attorney

*/s/*
**C. PAIGE MESSEC**
**KIMBERLY BRAWLEY**
Assistant U.S. Attorneys
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-7274
(505) 246-7296 fax