# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                Case No. 22-CR-1721-KWR

RAFAEL RAMIREZ-MARTINEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR MISTRIAL

**THIS MATTER** comes before the Court on Defendant's Motion for Mistrial that was made orally during trial. Given the Court's curative and limiting instructions, and the strong evidence of Defendant's guilt, the potentially improper statements made by the Government's witnesses do not warrant a mistrial. Having considered the parties' arguments and the relevant law, the Court finds that Defendant's motion is not well-taken. Thus, the Court **DENIES** Defendant's Motion for Mistrial.

## BACKGROUND

Defendant Rafael Ramirez-Martinez was charged with distributing 50 grams and more of methamphetamine on or about December 15, 2021, in violation of 28 U.S.C. § 841(a)(1) and (b)(1)(A). Doc. 2 (Redacted Indictment). His trial began on April 15, 2026. *See* Doc. 160. On April 16, 2026, the jury returned a verdict of guilty. Doc. 185 (Redacted Verdict).

During the examination of the Government's first witness, Federal Bureau of Investigation Special Agent ("SA") Jacob Naranjo, the Government questioned SA Naranjo about the execution of a search warrant that led to a confidential informant who eventually helped lead to Defendant.

*See* Trial Tr. vol. 1, 8–11, 20. When describing the search, SA Naranjo said, "I think, [agents] located approximately 13 pounds of methamphetamine throughout the trailer." *Id.* at 9:4–5. At this point, Defense counsel objected to foundation. *Id.* at 9:6. The Government asked if the confidential informant was later charged with methamphetamine trafficking, and whether he began cooperating. *Id.* at 10:9–20. Several minutes later, defense counsel moved for a mistrial and clarified that his initial objection was "that the officer made the conclusory statement to the jury" that the substance was in fact methamphetamine when there had been "no lab results of that." *Id.* at 18:8–13. The Government argued that this was simply overview testimony and that it was permissible. *Id.* at 18:15–20. The Court reserved ruling on Defendant's oral Motion for Mistrial. *Id.* at 18:25–19:2.

SA Naranjo's testimony continued, and he was asked about a December 15, 2021 transaction that involved Defendant and "suspected methamphetamine." *See id.* at 39:20–43:1. When shown video footage and asked about a "white object" on the screen, SA Naranjo stated that the "ziplock bags of white crystal substance, [were] presumed to be methamphetamine." *Id.* at 37:13–17. When asked about the results of the field test of the "suspected methamphetamine," SA Naranjo stated it came back as a "presumptive positive for methamphetamine." *Id.* at 41:22–25. SA Naranjo described the field-test procedures and explained, "we have small testing kits . . . [and] we put a small sample of methamphetamine into it." *Id.* at 42:5–7. He further explained that a presumptive positive turns dark blue, and that "this indeed turned that dark blue." *Id.* at 42:12.

The Government asked what exhibit number was assigned for the "suspected methamphetamine here," and SA Naranjo answered, "[t]he methamphetamine would have been" the 55th piece of evidence. *Id.* at 42:17–20. As a follow up, the Government asked what the FBI did after weighing and field testing the suspected methamphetamine, and SA Naranjo answered

that "after weighing and testing the methamphetamine we submitted a request." *Id.* at 42:25–43:3. Finally, when asked whether the Drug Enforcement Administration lab shipped the suspected methamphetamine back to the FBI, SA Naranjo stated, "[w]hen they shipped the methamphetamine back to us, the lab report showed it was methamphetamine." *Id.* at 44:9–10. Defense counsel objected, and the Court ordered the jury to disregard the last comment about the substance being methamphetamine at this point. *Id.* at 44:11–18.

Defendant moved for a mistrial once again and argued that SA Naranjo was "bound and determined to tell the jury that this is methamphetamine" even though there was not a lab report yet and SA Naranjo was not an expert. *Id.* at 45:21–25. The Government contended that SA Naranjo called it "suspected methamphetamine" when possible, and defense counsel claimed that the prosecutor had been "careful to call it that. The agent [had] not." *Id.* at 46:1–3. The Court overruled the renewed objection for a mistrial and maintained its reservation on the initial motion for a mistrial. *Id.* at 43:6–11. Following this exchange, the Court instructed the jury that "the methamphetamine to this point . . . is still considered suspected methamphetamine until such time as that is endorsed or not endorsed by the professionals who have the qualifications to make that determination. At this point, we're talking about suspected methamphetamine only." *Id.* at 46:20–47:4.

The following day the Government examined another witness, SA Aaron Marquis. Trial Tr. vol. 2, 4:9–10. Once more the Government discussed the execution of the November 5 search warrant, and once more an agent stated that the FBI "located approximately 13 pounds of methamphetamine." *Id.* at 7:20–23. Defendant promptly objected as to foundation and renewed his oral motion for mistrial. *Id.* at 7:22–23. The Court sustained the objection and immediately

instructed the jury to "please disregard [the agent's] last statement" and asked the government to have the agent identify the substance as suspected methamphetamine. *Id.* at 7:24–8:6.

Shortly after, the Government called forensic chemist, Bradley Fleming. Partial Trial Tr. vol. 2, 4 (Doc. 190). Mr. Fleming had been accepted in court as an expert in forensic chemistry approximately 70 times prior to this testimony. *Id.* at 5:15. Defendant did not object to his qualifications as an expert. *Id.* at 7:7. Mr. Fleming explained that he conducted testing on the substance the Government had offered as Exhibit 1 and found that "methamphetamine was present." *Id.* at 9:10. Mr. Fleming explained that he found methamphetamine and methamphetamine hydrochloride over separate tests performed on the substance. *Id.* at 9:10–10:6.

## DISCUSSION

Defendant's initial objection for lack of foundation concerned SA Naranjo's "conclusory statement to the jury" about the methamphetamine that was purchased because there had not yet been lab results introduced concerning that methamphetamine. Trial Tr. vol. 1, 18:8–13. The Government responded that the testimony was "overview testimony" and that SA Naranjo would "describe in great detail why he thinks it's methamphetamine." *Id.* at 18:14–20. The following objections and renewed motions for mistrial concerned the Government's witnesses' later references to "methamphetamine" rather than "suspected methamphetamine" or a "white crystal substance." *Id.* at 43:4–44:12; Trial Tr. vol. 2, 7:20–23. Considering the Court's curative and limiting instructions, assuming that SA Naranjo and SA Marquis's statements were improper, the Court finds that Defendant's right to a fair and impartial trial has not been impaired given the context of the entire case. Thus, the Court denies the motion for mistrial.

A district court may "declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so." *Renico v. Lett*, 559

U.S. 766, 773–74 (2010) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). In other words, a district court may "grant a mistrial only when a defendant's right to a fair and impartial trial has been impaired." *United States v. Wells*, 739 F.3d 511, 532 (10th Cir. 2014) (quoting *United States v. Cavely*, 318 F.3d 987, 997 (10th Cir. 2003)). In making the determination of whether the defendant's right to a fair and impartial trial has been impaired, the court must examine "the prejudicial impact of an error or errors when viewed in the context of an entire case." *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). A decision to grant a mistrial is "within the sound discretion of the district court." *Wells*, 739 F.3d at 533. However, the power to grant a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico*, 559 U.S. at 774 (quoting *Perez*, 22 U.S. at 580).

While some instances create a "prejudicial effect [that] cannot be erased," generally, "the effect of improper evidence may be remedied by admonishing the jury to disregard and by withdrawing the evidence." *United States v. Laymon*, 621 F.2d 1051, 1053 (10th Cir. 1980). When a prosecutor asks a question and the witness answers in a potentially improper way, courts consider the following three factors: "(1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt." *Meridyth*, 364 F.3d at 1183 (citation omitted).

The Court finds that any prejudicial effect arising from witness testimony concerning methamphetamine found during the execution of the November 5, 2021 search warrant is remedied by the Court's curative and limiting instructions. Additionally, any later references to "methamphetamine" rather than "suspected methamphetamine" do not constitute a prejudicial effect that cannot be erased by proper curative and limiting instructions.

There is no indication from the record, or argument by Defendant, that the prosecutors acted in bad faith to elicit the responses from SA Naranjo and SA Marquis that the agents "located approximately 13 pounds of methamphetamine." Trial Tr. vol. 1, 9:3–5; Trial Tr. vol. 2, 7:20–23. This is further supported by the Government's sustained effort to refer to the alleged methamphetamine as "suspected methamphetamine" throughout the examination. *See id.* at 39:21, 41:14–15, 41:22–23, 42:15–16, 44:8, 93:5. Additionally, a prosecutor even informed the Court that he had "no problem with [the Court] even instructing the jury that it's suspected [methamphetamine] until a lab can confirm it." *Id.* at 46:12–15. The following day, the Government also cabined the agent's testimony to what the agent believed the substance to be "[b]ased on [his] training and experience." Trial Tr. vol. 2, 8:10–11. Therefore, the Court finds no indication that the Government acted in bad faith.

Assuming the references to methamphetamine, not "suspected methamphetamine," were improper, the Court limited any effect on the jury through an immediate curative instruction and a limiting instruction. The Court instructed the jury that "at this point it is still considered suspected methamphetamine, until such time as that is endorsed or not endorsed by the professionals who have the qualifications to make that determination. At this point we're talking about suspected methamphetamine only." Trial Tr. vol. 1, 46:20–47:3. "We presume that jurors will follow clear instructions to disregard evidence 'unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.'" *United States v. Lamy,* 521 F.3d 1257, 1266 (10th Cir. 2008) (quoting *United States v. Caballero,* 277 F.3d 1235, 1243 (10th Cir. 2002)). There is no reason to believe the jury would be unable to follow the Court's instructions and consider any mention of "methamphetamine" to be "suspected methamphetamine" at that point in the trial.

Furthermore, given that the initial portion of the testimony provided overview and context as to how a confidential informant began working with the FBI which led to Defendant, it is highly unlikely that this mention of "methamphetamine" rather than "suspected methamphetamine" would be "devastating" to Defendant. *See United States v. Morgan*, 748 F.3d 1024, 1039 ("Where [admitted] evidence is later ruled inadmissible, a cautionary instruction is ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error." (quoting *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989)). Later mentions of "methamphetamine" rather than "suspected methamphetamine" would also not be "devastating" to Defendant as the Court issued a sweeping curative instruction that any mention of methamphetamine prior to a determination by a qualified expert should be considered "suspected methamphetamine only." Trial Tr. vol. 1, 46:20–47:3. Defendant did not contend that the Court's curative or limiting instructions would be ineffective. Finally, in an abundance of caution, the Court issued a limiting instruction to the jury directing the jury to consider all testimony concerning "methamphetamine" by a law enforcement officer to be referring to "a substance the officer believed to be methamphetamine," and that Senior Forensic Chemist Bradley Fleming, who testified, would not be considered a "law enforcement officer" for these purposes. Doc. 182 at 19 (Jury Instructions).

Finally, the Court finds that, in light of the other evidence put forth at trial, SA Naranjo and SA Marquis's mention of methamphetamine is inconsequential. *See Meridyth*, 364 F.3d at 1183 (noting that "where the prosecutor asked a question her witness answered in a potentially improper way" the Court considers "whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt"). Defendant's initial objection to SA Naranjo's description of the "approximately 13 pounds of methamphetamine," concerned background that

7

provided context for how the confidential informant led the FBI to make contact with Defendant and did not involve any of the alleged methamphetamine that Defendant was charged with.[1] The Government produced video exhibits that depicted Defendant counting money that was provided in exchange for the suspected methamphetamine. Gov't's Ex. 5 at 15:54–17:00; Trial Tr. vol. 1, 85:9–87:6. An FBI Special Agent testified that he personally observed Defendant take and count the money used to prepay for a delivery of methamphetamine. Trial Tr. vol. 1, 82:21–89:12. The Government produced a video that depicted Defendant and another individual providing a gray backpack containing what appeared to be "a white crystal substance, presumed to be methamphetamine." Gov't's Ex. 8 at 0:16–1:30; Trial Tr. vol. 1, 36:5–37:25, 95:1–21. An undercover agent also testified that Defendant handed him the gray backpack. Trial Tr. vol. 1, 91:20–21. The Government produced the gray backpack, which had contained the suspected methamphetamine. *Id.* at 91:21–93:23. The white crystal substance in the gray backpack was also admitted after a forensic chemist testified that he found methamphetamine and methamphetamine hydrochloride in the sample he tested. Partial Trial Tr. vol. 2, 9:10–20, 10:14–18 (Doc. 190); *see also* Doc. 183-1 (Exhibit List). The evidence presented is "powerful evidence of his guilt." *See Meridyth*, 364 F.3d at 1184 (describing testimony by undercover officer, surveillance officers, and

---

[1] The Court also notes that the initial mention of "methamphetamine" during the November 5 search warrant would likely qualify as *res gestae* evidence providing "contextual or background information to the jury." *See United States v. Alfred*, 982 F.3d 1273, 1279 (10th Cir. 2020). Defendant made no argument that the probative value of such context was substantially outweighed by any unfair prejudice. Because the initial discussion provided context for how the FBI began working with the confidential informant who led the investigators to Defendant, the probative value remains high. This background information is unlikely to elicit an "emotional response" from the jury or affect the jury's judgment toward Defendant in a manner separate from his guilt or innocence from the crime charged. Further, the Tenth Circuit favors admission of all relevant evidence and exclusion is an extraordinary remedy that "should be used sparingly." *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999). Therefore, in the alternative, the Court finds that the initial discussion qualifies as *res gestae* evidence not barred by Federal Rule of Evidence 403.

a defendant's brother to be "powerful evidence of guilt" despite a potentially improper statement). Even absent the Court's curative and limiting instructions, SA Naranjo and SA Marquis's references to "methamphetamine" rather than "suspected methamphetamine" are inconsequential in light of the other evidence presented to the jury.

Accordingly, the Court finds that Defendant's right to a fair and impartial jury has not been impaired and that a mistrial is not necessary.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant's oral Motion for Mistrial is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.


_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

9